UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SAUL R. HYMES and ILLANA HARWAYNE-
GIDANSKY, on behalf of themselves and all others
similarly situated,

                      Plaintiffs,

        - against -

BANK OF AMERICA, N.A., and Does 1 through 10,
inclusive,

                     Defendants.

-----------------------------------------------------------------x
ALEX CANTERO, individually and on behalf of all
others similarly situated,

                     Plaintiff,

        - against -

BANK OF AMERICA, N.A.,

                     Defendant.

-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

18-CV-2352 (RRM) (ARL)

18-CV-4157 (RRM) (ARL)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiffs Saul Hymes and Illana Harwayne-Gidansky (the "*Hymes* Plaintiffs"), and

plaintiff Alex Cantero (collectively with the *Hymes* Plaintiffs, "Plaintiffs"), bring this pair of

putative class actions against Bank of America, N.A. ("the Bank" or "Defendant"), seeking to

require the Bank to pay interest, as required by New York General Obligation Law ("GOL") § 5-

601, on money Plaintiffs have deposited into mortgage escrow accounts.  In a memorandum and

order dated September 30, 2019, (the "Prior Order"), the Court denied the Bank's motions to

dismiss two of Plaintiffs' four claims on the ground that the National Bank Act ("NBA")

preempts GOL § 5-601.  The Bank now moves to amend the Prior Order to certify the

preemption question for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and to stay further proceedings before this Court pending a decision from the Second Circuit.  For the reasons set forth below, the motions to amend the Prior Order are granted and the motions to stay are denied without prejudice to renewing the motions before the Magistrate Judge if the Second Circuit grants permission to file the interlocutory appeal.

## BACKGROUND

While familiarity with the history of this litigation, the Prior Order, and the instant motions is assumed, the Court will briefly recap the salient points for the convenience of the reader.  Plaintiffs are New York homeowners, who entered into a mortgage agreement with the Bank which requires them to make monthly payments (the "Escrow Funds") into mortgage escrow accounts maintained by the Bank.  The agreement signed by the *Hymes* Plaintiffs expressly provided that the Bank would not pay interest on the Escrow Funds unless required by "Applicable Law," and defined "Applicable Law" as "federal law and the law of New York State."  (*Hymes* Compl. (18-CV-2352 at Doc. No. 1) at ¶ 43.)  The mortgage agreement signed by Cantero did not specifically address the issue of whether the Bank would pay interest on Escrow Funds, but provided that the agreement would be "governed by Federal Law and the law of the jurisdiction in which the Property is located."  (*Cantero* Am. Compl. (18-CV-4157 Doc. No. 6) at ¶ 32.)

In 2018, the *Hymes* Plaintiffs and Cantero independently commenced the putative class actions at bar.  Although the actions were commenced by different law firms, they raised four nearly identical causes of action:  breach of contract, unjust enrichment, and violations of GOL § 5-601 and New York General Business Law ("GBL") § 349.  The Bank moved to dismiss both actions, principally arguing that both the NBA and regulations enacted by the Office of the

2

Comptroller of the Currency ("OCC") preempted GOL § 5-601, and that the Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd–Frank") did not affect the preemption analysis.

In the Prior Order (Doc. No. 47 in *Hymes*; Doc. No. 35 in *Cantero*; reported at 408 F. Supp. 3d 171), the Court dismissed Plaintiffs' unjust enrichment and GBL § 349 claims, but denied the Bank's motion to dismiss in all other respects. The Court acknowledged that the question of whether the NBA preempted a state law was "basically one of congressional intent" – that is, whether "Congress, in enacting the Federal Statute, intend[ed] to exercise its constitutionally delegated authority to set aside the laws of a State." *Hymes*, 408 F. Supp. 3d at 183 (quoting *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 30 (1996)). Since the parties agreed that Congress had not explicitly spoken to whether the NBA preempts state laws like New York GOL § 5-601, the Court applied the standard for implied preemption set forth in *Barnett Bank*, which permits the States to regulate national banks, provided that the state regulation "does not prevent or significantly interfere with the national bank's exercise of its powers." 517 U.S. at 33. Since no one argued that GOL § 5-601 prevented the Bank's exercise of its power to administer mortgage escrow accounts, the question became whether that state law "significant interferes with" the Bank's exercise of its powers. *Hymes*, 408 F. Supp. 3d at 194. The Court noted that the Supreme Court had "never explained in detail what this ['significantly interferes'] standard entails," and therefore looked to other Supreme Court precedent to "illuminate[ ] the standard's contours." *Id.* at 194.

The Court also considered other authorities bearing on the issue of Congressional intent, including OCC regulations and Dodd–Frank. With respect to the OCC regulations – which interpreted the NBA to permit real estate lending "without regard to state law limitations

concerning … [e]scrow accounts," 12 C.F.R. § 34.4(a) – the Court held that these regulations were entitled only to *Skidmore*, rather than *Chevron*, deference.  In so holding, the Court distinguished *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305 (2d Cir. 2005), which gave OCC regulations *Chevron* deference.  The Court held that *Burke* was "not fully apposite" and that two subsequent events – the Supreme Court's decision in *Wyeth v. Levine*, 555 U.S. 555 (2009), and the enactment of Dodd–Frank in 2010 – "undermined aspects of its approach."  *Hymes*, 408 F. Supp. 3d at 190.

With respect to Dodd–Frank, the Court interpreted 15 U.S.C. § 1639d(g)(3) – which requires creditors to "pay interest to the consumer on the amount held in any impound, trust, or escrow account" "[i]f prescribed by applicable State or Federal law" – to require the Bank to comply with GOL § 5-601.  The Court rejected the Bank's argument that the term "applicable" could be read as meaning, "at least in part, 'not preempted.'"  *Hymes*, 408 F. Supp. 3d at 186.  Rather, the Court held that "Congress meant 'applicable' simply to mean 'relevant.'"  *Id.* at 187.

The Instant Motions

Defendant now moves pursuant to 28 U.S.C. § 1292(b) to amend the Prior Order to certify for interlocutory appeal the question of whether the NBA and implementing regulations preempt GOL § 5-601 and similar state statutes which purport to require national banks to pay interest on mortgage escrow accounts.[1]  In those motions, Defendant also requests that the Court stay its proceedings pending resolution of the interlocutory appeal by the Second Circuit.

Section 1292(b) provides:

> When a district judge, in making in a civil action an order not
> otherwise appealable under this section, shall be of the opinion that
> such order involves a controlling question of law as to which there

---

[1] Separate motions were filed in *Hymes* (Doc. No. 65) and *Cantero* (Doc. No. 51), but those motions are essentially identical.  The Court has not considered the proposed *amici curiae* briefs submitted by the OCC and by the Bank Policy Institute, the Consumers Bankers Association, and the Chamber of Commerce.

> is substantial ground for difference of opinion and that an
> immediate appeal from the order may materially advance the
> ultimate termination of the litigation, he shall so state in writing in
> such order. The Court of Appeals which would have jurisdiction of
> an appeal of such action may thereupon, in its discretion, permit an
> appeal to be taken from such order, if application is made to it
> within ten days after the entry of the order: Provided, however,
> That application for an appeal hereunder shall not stay proceedings
> in the district court unless the district judge or the Court of Appeals
> or a judge thereof shall so order.

Defendant argues that the preemption issue addressed in the Prior Order is a "controlling question of law" since Plaintiffs' remaining claims will be dismissed if federal law preempts GOL § 5-601, and that the preemption defense presents pure questions of law.  (Def. Memo. of Law (Doc. No. 65-1 in *Hymes*; Doc. No. 51-5 in *Cantero*) at 5.)  Defendant also argues that there is a "substantial ground for difference of opinion" not only with respect to the Court's ultimate conclusion that federal law does not preempt GOL § 5-601, but also on 1) the proper interpretation of *Barnett Bank*'s "significantly interferes" test, 2) the meaning of the term "applicable" in 15 U.S.C. § 1639d(g)(3), 3) the level of deference to be afforded to the OCC's regulations, and 4) the question of whether Dodd–Frank affects the preemption analysis.  Finally, Defendant argues that an interlocutory appeal will not only "avoid protracted litigation" in this case, but "assist with the resolution of other pending cases."  (Def. Memo. at 19, 20.)  These arguments and Defendant's application for a stay are discussed in more detail below.

## DISCUSSION

I.   <u>Interlocutory Appeal</u>

"It is a basic tenet of federal law to delay appellate review until a final judgment has been entered."  *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).  "[F]ederal practice strongly disfavors discretionary interlocutory appeals, [as they] prolong judicial proceedings, add delay and

expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." *Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135 (RJS), 2015 WL 5544257, at *3 (S.D.N.Y. Sept. 17, 2015) (quoting *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007)) (bracketed material added in *China 1221*.)  "[I]interlocutory appeals typically create inefficiency for the Courts of Appeals," *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 9 (E.D.N.Y. 2007), since "piecemeal appeals … require two (or more) three-judge panels to familiarize themselves with a given case." *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991).  Accordingly, "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

Section 1292(b) provides "a rare exception to the final judgment rule that generally prohibits piecemeal appeals," *Koehler*, 101 F.3d at 865, permitting review of "[i]nterlocutory orders that are otherwise non-appealable" under certain circumstances.  *Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 211 (2d Cir. 2018), *cert. denied sub nom. YPF S.A. v. Petersen Energia Inversora S.A.U.*, 139 S. Ct. 2741 (2019), *and cert. denied sub nom. Argentine Republic v. Petersen Energia Inversora S.A.U.*, 139 S. Ct. 2741 (2019).  Under § 1292(b), a "district court may certify an order for such an appeal if the moving party shows that the order (1) 'involves a controlling question of law' about which (2) 'there is substantial ground for difference of opinion,' and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, No. 14-MD-2589 (JMF), 2019 WL 3202745, at *1 (S.D.N.Y.

July 16, 2019) (quoting 28 U.S.C. § 1292(b)). "The party seeking certification 'bears the burden of demonstrating that all three prongs of [Section] 1292(b) are met.'" *Id.* (quoting *In re Motors Liquidation Co.*, No. 17-CV-8712 (AJN), 2018 WL 4284286, at *3 (S.D.N.Y. Sept. 7, 2018)) (brackets added in *In re Barclays*). However, while the absence of any of the foregoing three elements is sufficient to deny a motion to certify an interlocutory appeal, s*ee Prout v. Vladeck*, 319 F. Supp. 3d 741, 747 (S.D.N.Y. 2018), the presence of the foregoing elements does not mandate granting the motion. "[E]ven if the order qualifie[s] for certification under 28 U.S.C. § 1292(b), the certification decision is entirely a matter of discretion for the district court." *In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 36 (2d Cir. 2014).

"Section 1292(b) was not intended ... to be a 'vehicle to provide early review of difficult rulings in hard cases.'" *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000) (quoting *German ex rel. German v. Fed. Home Loan Mortg. Corp.*, 896 F.Supp. 1385, 1398 (S.D.N.Y. 1995)). Rather, Congress passed 28 U.S.C. § 1292(b) "primarily to ensure that the courts of appeals would be able to rule on ... ephemeral question[s] of law that m[ight] disappear in the light of a complete and final record," and "to assure the prompt resolution of knotty legal problems." *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007) (internal quotation marks and citations omitted; ellipses and brackets in original). The Second Circuit has "repeatedly cautioned [that] … use of this certification procedure should be strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (per curiam) (alterations and internal quotation marks omitted). However, the Second Circuit has also stated that "[w]hen a ruling satisfies these criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory

7

appeal.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)).

    A. <u>Controlling question</u>

       "Courts in this Circuit typically evaluate whether a controlling question of law exists by considering whether either (1) 'reversal of the district court's opinion could result in dismissal of the action'; (2) 'reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action,' or (3) 'the certified issue has precedential value for a large number of cases.'" *Green v. Humana at Home, Inc.*, No. 16-CV-7586 (AJN), 2019 WL 3729390, at *3 (S.D.N.Y. Aug. 8, 2019) (quoting *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656 (AJN), 2015 WL 876456, at *3–4 (S.D.N.Y. Mar. 2, 2015)). Courts also require that the issue to be certified for interlocutory appeal be a "'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Capitol Records LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013).

       Defendant argues that "there is no dispute" that all of Plaintiffs' claims will be dismissed if federal law preempts GOL § 5-601, and that its preemption defense presents pure questions of law. (Def. Memo. at 5 (citing *Spong v. Fid. Nat. Prop. & Cas. Ins. Co.*, 787 F.3d 296, 304 (5th Cir. 2015) ("Whether federal law preempts [plaintiffs'] claims certainly falls within the ambit of 28 U.S.C. § 1292(b).") Plaintiffs do not contest that this element has been met. (*See* Hymes' Memo. in Opposition (Doc. No. 65-5 in *Hymes*) at 1 ("Defendant's motion fails to satisfy ... *two* of the three requisite factors for interlocutory review.") (emphasis in original); Cantero Memo. in Opposition (Doc. No. 51-6 in *Cantero*) at 5.) The Court agrees with Defendant that the preemption issue is dispositive of the cases at bar and is a pure question of law. Accordingly, the Court finds that the "controlling question" prong has been established.

B.  Substantial Ground for Difference of Opinion

"The second prong of the test, that there exists a substantial ground for difference of opinion, is met when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'"  *Capitol Records*, 972 F. Supp. 2d at 551 (quoting *In re Enron Corp.*, No. 06-CV-7828 (SAS), 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007)).  The Second Circuit has emphasized that "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion."  *In re Flor*, 79 F.3d at 284.  A district judge must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute."  *Id.* (emphasis in original).

Defendant claims there is a substantial ground for difference of opinion not only with respect to the Court's ultimate conclusion that federal law does not preempt GOL § 5-601, but also on 1) the proper interpretation of *Barnett Bank*'s "significantly interferes" test, 2) the meaning of the term "applicable" in 15 U.S.C. § 1639d(g)(3), 3) the amount of deference to be afforded to the OCC's regulations, and 4) the question of whether Dodd–Frank affects the preemption analysis.  After analyzing the strength of Defendant's arguments, the Court concludes that this prong has also been met.

First, as the Court noted in its Prior Order, the question of whether the NBA preempts GOL § 5-601 and similar state laws requiring national banks to pay interest on mortgage escrow accounts is a question of first impression in the Second Circuit.  *See Hymes*, 408 F. Supp. 3d at 184.  In addition, some of the determinations that are central to the preemption analysis are difficult because the precise contours of certain pivotal terms are not well defined.  First, while

the Supreme Court has made it clear that states have the "power to regulate national banks, where … doing so does not prevent or significantly interfere with the national bank's exercise of its powers," *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996), the Supreme Court "has never explained in detail what this standard entails."  *Hymes*, 408 F. Supp. 3d at 194. The Court attempted to ascertain the contours of this standard by examining two older Supreme Court cases:  *Franklin Nat. Bank of Franklin Square v. People*, 347 U.S. 373 (1954), and *Anderson Nat. Bank v. Luckett*, 321 U.S. 233 (1944).  However, defining the precise contours of the *Barnett Bank* standard from such a limited sample of cases is inherently difficult, leaving substantial grounds for dispute.

Similarly, as the Court itself acknowledged in the Prior Order, there is ample room for dispute regarding the meaning of the term "applicable" as used in 15 U.S.C. § 1639d(g)(3).  The Court pointed to various definitions of the term and noted: "The task here is to choose among these various meanings."  *Hymes*,  408 F. Supp. 3d at 187.  Although this Court interpreted the term as meaning "relevant" or "having relevance," rather than "able to be applied," *id.*, it conceded that the Ninth Circuit interpreted the term differently, opining "that [Congress] used the term 'applicable' to refer to state escrow interest laws where they exist."  *Id.* n.9 (quoting *Lusnak v. Bank of America, N.A.*, 883 F.3d 1185, 1195 (9th Cir.), *cert. denied*, 139 S. Ct. 567 (2018)).  Given the conflicting authorities and the lack of a statutory definition, there is a substantial ground for difference of opinion as to the meaning of this term.

There is also substantial ground for dispute as to the deference to be afforded to 12 C.F.R. § 34.4(a) – the provision of the Office of the Comptroller of the Currency's 2011 regulations which provides that "[a] national bank may make real estate loans … without regard to state law limitations concerning … [e]scrow accounts, impound accounts, and similar

accounts."  In *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305 (2d Cir. 2005), the Second Circuit

held that OCC regulations providing for the preemption of state laws purporting to regulate

operating subsidies of national banks were entitled to *Chevron* deference.  *Id.* at 315.  Although

this Court distinguished *Burke* and cast doubt on its continued validity, Defendant correctly notes

that this Court's finding that *Burke* did not control the question of what deference to afford the

OCC's regulations can be questioned on several grounds.

First, while this Court noted that *Burke* was not "fully apposite," *Hymes*, 408 F. Supp. 3d

at 190, it was not entirely inapposite, either.  *Burke* addressed the question of whether different

OCC regulations – 12 C.F.R. §§ 5.34 and 7.4006 – preempted Connecticut state laws which

subjected subsidiaries of national banks to state licensing and inspection.  However, *Burke*

analogized those regulations to ones at issue in this case, concluding that "the combined effect of

12 C.F.R. § 34.1(b) and § 34.4 is that state regulation of real estate lending by national bank

operating subsidiaries may be preempted."  *Burke*, 414 F.3d at 313.  *Burke* was unquestionably

more similar to this case than *Wyeth v. Levine*, 555 U.S. 555 (2009), which addressed the

question of whether the federal Food and Drug Administration's drug labeling judgments

"preempt state law product liability claims premised on the theory that different labeling

judgments were necessary to make drugs reasonably safe for use."  *Wyeth*, 555 U.S. at 563.

Second, Defendant fairly questions this Court's assertion that *Wyeth* made it clear "that

agency conclusions about preemption should receive only *Skidmore* deference."  *Hymes*, 408 F.

Supp. 3d at 190 (citing *Wyeth*, 555 U.S. at 576).  In *Wyeth*, the Supreme Court rejected a drug

manufacturer's claims that failure-to-warn tort claims were preempted because they interfered

with "Congress's purpose to entrust an expert agency to make drug labeling decisions that strike

a balance between competing objectives."  555 U.S. at 573.  The Supreme Court declined to

defer to the FDA's own assessment that "certain state-law actions, such as those involving failure-to-warn claims," were preempted because they "threaten FDA's statutorily prescribed role as the expert Federal agency responsible for evaluating and regulating drugs." *Id.* at 575–76 (quoting 71 Fed. Reg. 3922, 3935 (2006)).  *Wyeth* pointed to the fact that Congress had never enacted an express preemption provision during the Federal Food, Drug, and Cosmetic Act's 70-year history as "powerful evidence that Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness." *Id.* at 575.  After noting that Congress had not authorized the FDA to preempt state law directly, the Court held:

> While agencies have no special authority to pronounce on pre-emption absent delegation by Congress, they do have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. … The weight we accord the agency's explanation of state law's impact on the federal scheme depends on its thoroughness, consistency, and persuasiveness. *Cf. United States v. Mead Corp.*, 533 U.S. 218, 234–235 … (2001); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 … (1944).

*Wyeth*, 555 U.S. at 576–77 (internal quotation marks and citations omitted).

As Defendant notes, "*Burke* recognized that Congress gave the OCC authority to promulgate regulations that 'demarcate more clearly what state laws are and are not preempted with respect to real estate lending activity.'"  (Defendant's Memo at 13 (quoting *Burke*, 414 F.3d at 320)).  In light of this express Congressional delegation of authority to the OCC, Defendant has a substantial argument that the *Wyeth*'s holding that agency conclusions about preemption receive only *Skidmore* deference might be inapplicable to the cases at bar.

Third, this Court's conclusion that Dodd–Frank undermined *Burke* is also susceptible to a challenge for the same reason explained above.  Dodd–Frank addressed the preemptive effect of

12

the NBA in several ways, including clarifying that the OCC's preemption determinations are entitled only to *Skidmore* deference.  *See* 12 U.S.C. § 25b(b)(5)(A).  However, the Ninth Circuit has opined that this clarification was not "an actual change in the law," but "merely codified existing law as set forth by the Supreme Court" in *Wyeth*.  *Lusnak*, 883 F.3d at 1192.

C.  Materially Advance the Ultimate Termination of the Litigation

One of the central goals of 28 U.S.C. § 1292(b) was "saving trial court time by avoiding fruitless litigation."  *Koehler*, 101 F.3d at 866.  Congress sought, among other things, "to assure the prompt resolution of knotty legal problems."  *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007).  Thus, "the use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation."  *Koehler*, 101 F.3d at 865–66.

Certifying an interlocutory appeal in this case would vindicate the central purposes of § 1292(b).  The preemption question that Defendant seeks to certify for interlocutory appeal is unquestionably the central question in this case.  If the Second Circuit were to determine that the NBA preempted GOL § 5-601, Plaintiffs' remaining causes of action would be dismissed. Conversely, if the Second Circuit were to determine that GOL § 5-601 was not preempted, that ruling could be expected to promote settlement in this case.  Either way, certifying an interlocutory appeal on the preemption issue would materially advance the ultimate disposition of this litigation.

D.  The Court's Exercise of its Discretion

Although the Court concludes that Defendant has made out the three elements necessary for certification of an interlocutory appeal under 28 U.S.C. § 1292(b), the certification decision remains entirely a matter of discretion for the Court.  *See In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d at 36; *Nat'l Asbestos Workers Med. Fund v. Philip Morris,*

*Inc.*, 71 F.Supp.2d 139, 146 (E.D.N.Y. 1999) (district courts have "independent and 'unreviewable' authority to deny certification even where the three statutory criteria are met"). The Court can exercise "[s]uch unfettered discretion … for 'any reason, including docket congestion' and 'the system-wide costs and benefits of allowing the appeal.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (quoting *Klinghoffer*, 921 F.2d at 24). The Court may grant certification "if the statutory criteria are met and the court believes that immediate appeal would best foster a simultaneously effective and efficient judiciary." *Buehlman v. Ide Pontiac, Inc.*, 268 F. Supp. 3d 437, 441 (W.D.N.Y. 2017) (quoting *Katsanis v. Blue Cross & Blue Shield Ass'n*, No. 07-CV-696C, 2010 WL 2160353, at *1 (W.D.N.Y. May 27, 2010)).

The Court finds that this case presents one of the rare instances in which there would be system-wide benefits to granting an interlocutory appeal. As Defendant correctly notes in its letter dated January 30, 2020 (Doc. No. 70 in *Hymes*; Doc. No. 53 in *Cantero*), there are at least three other cases pending before district courts in this Circuit which raise the same preemption question at issue here. One – *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456 (RPK) – is pending before another judge in the district; two others – *347 Townhouse, LLC v. Citibank, N.A.*, No. 19-CV-542 (LAP), and *Tepper v. Santander Bank, N.A.*, No. 20-CV-501 (KMK), are pending before district judges in the United States District Court for the Southern District of New York. All involve banks other than Defendant and are pending before jurists who, judging from their published opinions, have yet to grapple with this complex preemption question. Certifying an interlocutory appeal on this question would save those defendants and jurists the considerable time and effort of re-litigating the preemption issue and thereby "best foster a

14

simultaneously effective and efficient judiciary." *See Buehlman*, 268 F. Supp. 3d at 441;

*Katsanis*, 2010 WL 2160353, at *1.

II.     Stay of Discovery

    Although the Court, in its discretion, concludes that certification of an interlocutory

appeal is appropriate, that conclusion does not mandate a stay of discovery.  Section 1292(b)

expressly provides that an "application for an appeal hereunder shall not stay proceedings in the

district court unless the district judge or the Court of Appeals or a judge thereof shall so order."

In deciding whether to order a stay pending appeal, courts in this Circuit consider four factors:

"(1) whether the stay applicant has made a strong showing that he is likely to succeed on the

merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance

of the stay will substantially injure the other parties interested in the proceeding; and (4) where

the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir.

2007) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  "The degree to which a factor

must be present varies with the strength of the other factors, meaning that 'more of one [factor]

excuses less of the other.'" *Id.* (quoting *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)).

    Although Defendant may not have made a strong showing of likelihood of success on the

merits, there is a substantial ground for difference of opinion with respect to certain aspects of

the Prior Order.  Since Defendant's appeal has the potential to resolve this case without the need

for further discovery, the Court finds that it is in the public interest and the interests of all parties

to stay discovery and all further proceedings before this Court until the Second Circuit has either

denied Defendant's petition for permission to file an interlocutory appeal or resolved that appeal.

Accordingly, the motions to appoint interim class counsel are deemed withdrawn.  These

motions may be re-filed, if necessary, after the Second Circuit rules.

**CONCLUSION**

For the reasons set forth above, defendant Bank of America's motions to amend the Prior Order to certify the preemption question for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) are granted.  The Prior Order is deemed amended to certify the following question for immediate review:  "Whether the National Bank Act and implementing regulations preempt New York General Obligations Law § 5-601 and similar state statutes that purport to require national banks to pay interest on mortgage escrow accounts."  The Bank's motions to stay further proceedings before this Court pending a decision from the Second Circuit on the Bank's petition(s) for permission to file an interlocutory appeal are granted.  The motion to appoint interim class counsel (Docs. No. 56 & 57 in *Hymes* and Doc. No. 47 in *Cantero*) are deemed withdrawn but may be re-filed, if necessary, after the Second Circuit rules.

SO ORDERED.

Dated: Brooklyn, New York
        September 29, 2020

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge